EIELD, P.,
delivered the opinion of the court.
Stephen R. Neale and John H. Bennett, on the 12th day of January, 1833, entered into articles of partnership, to carry on the mercantile business in the town of Danville, Virginia, under the name of 1 ‘Neale & Bennett,” and in the county of Guilford, North Carolina, under the firm of “Bennett & Neale.” Neale to conduct the business at Danville, and Bennett at Guilford county. This partnership continued until about September 17th, 1838, when it was dissolved. On the 27th October, 1836, they purchased of Thomas Rawlings a lot of ground in the town of Danville, on which they erected a large brick house for the use of the concern, in which, after the dissolution of the partnership, Neale carried on business in his own name. The contract with Rawlings for the purchase of the property, made by Wm. R. Hagood, on behalf of himself and Neale & Bennett, embraced two lots, one for Hagood, and the other for Neale & Bennett. Hagood, as well as Neale & Bennett, were bound for their compliance with the terms of the contract. On the 30th May, 1837, Rawlings and wife, by their deed of that date, conveyed the lot which had been purchased for Neale & Bennett to them by their partnership name. The deed *was duly executed by Rawlings and wife, acknowledged by them before two justices of the peace, who certified the same to the county court of Pittsylvania for record. The deed was delivered to Hagood. He presented it to Neale. Neale accepted it, but as Hagood was bound for the payment of the purchase money, then not due, Neale left the deed with Hagood as collateral security for its payment. When the purchase money became due it was paid by Hagood to Rawlings. Neale & *770 Bennett- re-paid to Hagood $150, August 11th,, 1838, and $930.05, 21st March, 1839, leaving.' a balance due of $456.20, besides interest. This was paid about the 1st of February, 1841, and then Hagood surrendered-, the-deeddo Neale. Prior to this date,, the partnership had been dissolved, and Neale was carrying on mercantile business in the house, and having become largely indebted.-to the Messrs. James for goods, he did, by-his deed of the 17th January, 1840, convey the house and lot to-John Dickinson, John Ross, John N. Gordon and Peachy R. Grattan, in trust, to secure the payment of.the debt due the Messrs. James. In this deed of trust the property is described as “the lot purchased by Neale & Bennett of Rawlings.” At the time of making this deed of trust, Neale claimed the house and lot as his individual property, under an agreement of partition between him and Bennett, manifested by two written memo-randa, bearing date September 17th, 1838. One is a,list ofpropérty, embracing, among other things, the house and lot in question, at the foot of which is a memorandum in these words: “The above to be charged to the account of Stephen R. Neale on the books of Neale & Bennett, Danville, Virginia,” signed, “J. H. Bennett.” The other is a list of property, embracing four tracts of. land in North Carolina, amongst other, things, at the foot of which is a memorandum in these words: “The above to be charged to the account of John H. Bennett,” signed, “Stephen R. Neale.” The execution of these papers respectively by the two parties, was duly proved. During *all this time the deed from Rawlings and wife to Neale & Bennett was in the hands of Hagood as collateral security, or equitable mortgage, to secure the payment of the purchase money, and remained so until about the 1st February, 1841, wh.en Hagood acknowledged full payment and delivered up the deed to Neale.
On. the 10th of February, 1841, Neale through the agency of Hagood returned the deed to Rawlings, and obtained in place of it a deed from Rawlings and wife, by which they undertook to convey the house and lot to Neale. This deed was acknowledged, certified, and admitted to record in the County County of Pittsylvania on the 29th March, 1841. On the 22d March, 1841, Neale by deed of that date conveyed one moiety of the four tracts of land lying in N orth Carolina, and mentioned in the above rqemo-randum.-of partition, signed by Neale, to Hagood in trust for the payment of sundry debts due from the firm of Neale & Bennett. This deed was duly executed, acknowledged,' certified and admitted to record in the court of Guilford county, North Carolina, on the 27th March, 1841. After all these things had transpired, Bennett and wife, b.y. their deed of the 2d April,. 1841, conveyed one-half of the house and lot in question, to William H. Tunstall and Thomas S. Jones in trust to secure the payment of a: partnership debt due from Neale & Bennett. This deed was admitted to record in the County Court of Pittsylvania April 5th, 1841. Under this deed the moiety of the house and lot was sold to the appellants on the 11th August, 1841, at the price of $800, and the legal title thereto conveyed to them by deed of- that date, which was admitted to record in the proper court the 23d June, 1842. The purchasers not being able to get possession of their moiety of the house and lot, filed their bill in the Circuit Superior Court of Law and Chancery of Pittsylvania county, to set aside the deed from Rawlings and wife to Neale, and to set up the deed from Rawlings and wife to Neale & Bennett, and. for general relief. The defendants, Stephen R. Neale and the *Messrs. James filed their answers, insisting on the validity of the deeds from Rawlings and wife to Neale, and from Neale to the trustees, for the benefit of the Messrs. James; that the deed from Rawlings and wife to Neale & Bennett had not been delivered, and was therefore void, ahd that the deed from Bennett to Tunstall & Jones was void and ineffectual for passing title to the trustees, because the possession of the land under the deed to the. trustees for the Messrs. James was adversary. On the hearing the bill was dismissed with costs against the complainants, who appealed to .this court. I have deemed it necessary to be thus particular in setting forth the prominent features of this case to shew how the various questions so well discussed at the bar, and upon which an opinion is to be expressed, arise in-this cause.
In the first place, I will notice the questions that arise on the deed of the 30th May, 1837, from Rawlings to Neale & Bennett, as to the validity of the deed and the nature of the estate conveyed thereby to Neale & Bennett.
This deed appears to have been duly executed, acknowledged and certified for record. It was delivered to Hagood. He carried it to Neale for Neale & Bennett. Neale accepted it. It was afterwards held by Hagood at the instance of Neale for several years as an equitable mortgage to secure the payment of the purchase money. After the money was paid, it was returned to Neale by Hagood. Under these circumstances, I think we are bound to regard the deed as.having been signed, sealed and delivered and as effectual for passing title to the property to the partnership, Neale & Bennett, each of the partners being seized of an undivided moiety thereof as tenants in common, subject to the equities of the partnership. The title to the property remained in this condition until the partners, by virtue of the deeds herein before referred to, conveyed away their interest therein, notwithstanding the division agreed upon on the 17th September 1838, for reasons hereinafter, ^assigned, and notwithstanding the return of the deed by Neale to Rawlings in 1841. In the case of Grayson v. Richards, 10 Leigh, 57, in which a father, by deed of gift, conveys lands to his son, and shortly after the son voluntarily sur *771 renders the deed to the father to be can-celled, with a design to divest the title out ■of himself and restore it to the father, and the deed is cancelled, the Court of Appeals held, that the son’s title is not divested by the cancellation of the deed. Under the authority, as well as reason, of this case, w e must hold that the surrendering of the ■deed by Neale to Rawlings did not divest Neale & Bennett of their title to the land. They could not divest themselves of their title to the land otherwise than by a written ■conveyance.
It appears from the written memorandums above referred to, dated Sept. 17th, 1838, that the two partners had agreed upon a partial division of their partnership prop-ertj', under which, if it had been perfected, Neale would have been entitled to the house and lot in question as his separate property. This agreement gave to each partner a right to call upon the other for the legal title to his moiety of the property. This was not ■done, nor can it be done now. The partners have conveyed away all interest they had in the property at the date of the agreement; and it is therefore impossible for ■either to perfect the agreement by conveying his half of the land to the other; and by this act they have abrogated the agreement ■of partition. That agreement was an ex-ecutory agreement only until the property was actually converted into separate property. In order to make the conversion of joint property into separate, every requisite of transmission must be attended to according to the nature of the property assigned. Debts due to a partnership, whether by bond or simple contract, will not be converted into sepai'ate property of one of the partners, unless due notice be given to the debtor of the conversion; for until notice be given, the debt remains in the order and disposition of the creditor, and is still payable to him. Collyer on *Partnership, sec. 896; Ryall v. Rowles, 1 Ves. 367; Jones v. Gibbons, 9 Ves. 410; Ex parte Williams, 11 Ves. 3. This being the rule as to debts, it applies with much more reason to the conversion of joint real estate to separate, the title to which can be conveyed only by deed. On this ground the agreement of partition as to the land was inoperative; and when each of the partners disqualified himself from conveying to the other the legal title to his half of the property, the agreement became null and void, and can therefore have no sort of influence upon the decision to be made in this case. Being stripped of this feature, what is the law of the case as it now remains?
The legal and equitable effect and operation of the deed from Rawlings to Neale & Bennett, can be clearly perceived by the application of a few general principles. When real estate is purchased by partners with partnership funds, to be used for partnership purposes, and considered and treated by the partners as partnership stock, it is to be deemed, so far as the legal title is concerned, as an estate held in common by the partners; but as to the beneficial interest, it is to be considered in equity as effected with a trust for the benefit of the partnership until the accounts are settled and the debts paid. Holding as tenants in common, each partner may sell his individual interest in the land to whomsoever, and for what purposes he pleases, subject to the equity of the partnership. He may give a preference to a partnership creditor, and make a deed conveying his share of the land as tenant in common to secure the payment of the debt of the preferred creditor. And this conveyance will be good and valid both at law and in equity, and will have priority over the claims of all other creditors. These principles are fully sustained by the cases of M’Cullough v. Sommerville, 8 Leigh, 415; Anderson & Wilkins v. Tompkins, 1 Brock. R. 457; Coles adm’x v. Coles, 15 John. R. 159; and Dyer v. Clark, adm’r et als., 5 Metcalf, 562.
If we apply these principles and the provisions of the *act of Assembly (ch. 99, sec. 20, page 388, of the Code of 1819) in relation to conveyances, it will be found that the deed of trust from Neale to Dickinson and others, for the benefit of the Messrs. James, was valid by law, as to half of the house and lot, subject to the equitable trust of the partnership until the accounts were settled and the debts paid, but void as to the other half. If we apply them to the deed of trust from Bennett to Tunstall and Jones, for the benefit of Coleman D. Bennett, a partnership creditor, we shall find that by that deed the trustees acquired a good and valid title to the extent of the purposes of the deed, which is good both at law and in equity, and gave priority over the claims of all other creditors of the concern. In the first case, the deed has been made for the payment of the individual or separate debt of the partners; in the second, for the payment of the social debt of the partnership, and hence the very . great difference in the effect and operation of the two deeds. In both cases, however, the trustees acquired at law a perfect title to one-half of the property, which could be effectually asserted in a court of law, except from some circumstances peculiar to the second deed hereinafter noticed.
The defendant Neale, in his answer, insists that at the time when the deed from Tunstall to the appellants was executed, he held the possession of the house and lot for the trustees of the Messrs. James by an adverse title to that of Bennett, and that the deed from Tunstall to the appellants is void on that ground. The same objection is made by the Messrs. James in their answer. The possession was not adversary. It was the possession of a co-tenant in common of the whole estate, and was in fact' the possession of Neale & Bennett, and the effect of the deed-to James’s trustees was to transfer to them this social possession of the property, and not to produce an eviction of Neale the co-tenant.
The Messrs. James say they are purchasers without notice for valuable consideration. They must have a ^singular idea of what constitutes notice, when it appears upon the face *772 of the deeds under which they claim, that the property is described as “being the property- purchased by Neale & Bennett of Thomas Rawlings.’’ But no notice of such case is necessary, unless the terms of the deed to partners be of a character to deceive and mislead the mind by inducing the belief that the conveyance had been made for the separate and individual benefit of the members of the firm. See the case of Forde, v. Herron, 4 Mun. 316. In such a case a notice would no doubt be necessary.
The Messrs. James in their answer say, that if the appellants’ title be a good title to a moiety of the property, it is a legal title over which a court of equity had no jurisdiction. It is true, that the deed from Bennett to Tunstall and Jones gave them a legal title to half of the house and lot, which was held in common with the trustees for the Messrs. James. Yet there are several good reasons or grounds upon which the exercise of jurisdiction by a court of equit3 can be sustained. 1st. The appellants had a right to go into equity to have partition made of the property. 2dly. To have the deed from Rawlings to Neale set aside. And 3dly, to set up, establish and have recorded, the deed from Rawlings to Neale & Bennett. So long as the first mentioned deed existed, and the last mentioned remained in obscurity, there was a cloud over the appellants’ title, and an impediment and difficulty in the way of an effectual assertion of their rights in a court of law, which rendered it proper in them to apply to a court of equity for relief.
I believe there is but one more point to be noticed. This is an objection raised not by the pleadings, but in the testimony of the witnesses, to the validity of the sale by Tunstall to the appellants, on the score of inadequacy of price. The half of the house and lot was purchased by the appellants at $800. One of the witnesses thinks if the property were sold free from incumbrances and objections, it would bring from twelve *to fourteen hundred dollars. Who was it that interfered on that occasion and caused a sacrifice of the property, if indeed a sacrifice was made? They were the trustees of the Messrs. James who stepped forward in their behalf and forbade the sale. Dickinson & Ross were there claiming title to the property and giving notice to the bidders that the trustees under the deed for the benefit of the Messrs. James were in possession of the property, and would not surrender possession to the purchaser at that sale. Upon this point the case of Borde v. Herron, before referred to, is a conclusive authority to shew that the sale should not be set aside at the instance of the Messrs. James, because the property had not been sold for a full price. In that case the appellant sought to set aside a sale which had been made to the appellee, on the ground of its having been made at a sacrifice. The appellant had previously purchased the property himself, under a decree of the Hustings Court of Norfolk. He was present, asserted his claim, and forbade others to purchase, which caused the smallness of the price produced at the sale to the appellee. The Court of Appeals holding “that a sale ought not to be set aside on the ground of smallness of price, if that was occasioned by the acts of the complainant,” sustained the sale to the appellee against the claim of the appellant.
For these reasons, I think the decree should be reversed and relief given to the appellants.
DECREE.
The court is of opinion that the said decree is erroneous; therefore, it is decreed and ordered, that the same be reversed and annulled, and that the appellees Stephen R. Neale, Fleming James, Edwin James and Henry James, surviving partners of the firm of Fleming James and Joseph S. James & Co., and of F. & J. S. James & Co. do pay unto the appellants their costs by them expended in the prosecution of their ^appeal aforesaid here; and this court proceeding to pronounce in part such decree as the said circuit superior court ought to have pronounced, doth further adjudge, order and decree, that the deed from Rawlings and wife to Stephen R. Neale, bearing date May the 30th, 1837, and recorded in the County Court of Pittsyl-vania the 29th March, 1841, be revoked and annulled, and that the deed of the 30th May, 1837, from Rawlings and wife to Neale & Bennett, conveying the lot of ground therein mentioned, be set up and established as a good and valid conveyance from the former to the latter; and it is ordered that the cause be remanded to the Circuit Court of Pittsylvania county, with directions to cause the last mentioned deed to be delivered to the appellants to be recorded according to law, and also to cause partition of the property embraced in the said deed to be made if practicable, and to assign one-half to the appellants, and the other Jialf to John Dickinson, John Ross, John N. Gordon and Peachy R. Grattan, trustees in the deed made by Stephen R. Neale for the benefit of the Messrs. James. But if such partition cannot be made, then to cause the property to be sold and divide the net proceeds of sale equally between the appellants and the said trustees, giving to the appellants one-half, and the said trustees the other half.
And on motion of the appellants, a supplemental order was entered, directing a reference • to a commissioner by the court below, to take an account of the rents of the house and lot from the 11th August, 1841, until the property should be surrendered under the decree, for division or sale, for one moiety of which the appellees, Stephen R. Neale, and the Messrs. James should be held responsible to the appellants.
Decree reversed.